**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:   SCOTT L. CARLBON,

                                                              Chapter
                                                              Case No. 10-14413 (RTL)

         Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - - -X
JANICE FOY,

                                                             Adversary Proceeding
                Plaintiff,          Case No. 10-1654 (RTL)
       v.

SCOTT L. CARLBON,

         Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - -X

## **OPINION**

**APPEARANCES:**

MARCHETTI LAW, PC
Anthony L. Marchetti, Jr., Esq.
Attorneys for Plaintiff

TEICH GROH
Barry W. Frost, Esq.
Attorneys for Debtor/Defendant

**RAYMOND T. LYONS, U.S.B.J.**

## **INTRODUCTION**

Plaintiff objects to the discharge of the Debtor under 11 U.S.C. § 727(a)(2) – (5).   The

Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code on February 17, 2010. On his schedule of personal property, the Debtor listed miscellaneous antiques valued at $1,000 and miscellaneous household goods valued at $1,500.   Three and a half years earlier, on September 20, 2006, he gave a written personal financial statement for himself and his company to a bank that listed an antique and art collection valued at $180,000.   In addition, the Debtor refinanced a mortgage through his wholly owned company and received $300,000 in loan proceeds.   He has failed to account for the disposition of those loan proceeds despite repeated demands from the plaintiff.   The Debtor has failed to explain satisfactorily the loss or deficiency of these assets within the meaning of Section 727(a)(5).

There are no financial statements for the Debtor's wholly owned company and no records to determine whether a restaurant business was profitable, even by a co-owner – the Plaintiff. Furthermore, the Debtor failed to file tax returns for himself or his wholly owned company since 2006 and has produced no records of his personal loans and extensive collection of art and antiques.   The Debtor has failed to keep records from which his financial condition or business transactions might be ascertained under Section 727(a)(3).

The court will enter judgment denying the Debtor a discharge under Section 727(a)(3) and (5).

## JURISDICTION

This court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a) and the Standing Order of Reference by the United States District Court for the District of New Jersey dated July 23, 1984, referring all proceedings arising under Title 11 of the

United States Code to the bankruptcy court. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(J) - objection to discharge.

## FINDINGS OF FACT AND PROCEDURAL HISTORY

Plaintiff, Janice Foy, and the Debtor, Scott Carlbon, opened a restaurant called "Birches" in a building owned by Mr. Carlbon through his wholly owned company, Foresite, L.L.C. Foresite owned a liquor license as well that was used by Birches. Although Ms. Foy and Mr. Carlbon agreed to be co-owners of Birches, they never completed the process of transferring assets, including the liquor license, to a newly formed company or issuing membership in that company. All of the receipts and disbursements for the restaurant went through bank accounts in the name Foresite, L.L.C. In addition to the restaurant business, Foresite, L.L.C. owned and leased commercial and residential real estate and operated a marketplace for antique vendors.

Ms. Foy invested in the restaurant by periodic cash contributions totaling over $1 million. The relationship deteriorated and she sued Mr. Carlbon and his company in state court. She was awarded a judgment for damages in excess of $1 million against Foresite, L.L.C., but the suit against Mr. Carlbon was stayed by his filing bankruptcy pursuant to § 362(a) of the Bankruptcy Code.

Ms. Foy filed a complaint with this court for a determination of dischargeability under §523(a) of the Bankruptcy Code and objecting to discharge under §727(a). At the court's suggestion, the trial focused on the §727 issues with the §523 issues preserved pending the outcome of the objection to discharge.

In her complaint, Ms. Foy alleged that the Debtor was responsible for bookkeeping for the

restaurant and the filing of tax returns with the State of New Jersey and the Internal Revenue Service ("IRS"), including sales tax returns. Mr. Carlbon has a background in economics, and has operated an antiques emporium and real estate rental business. There were two checkbooks used for Birches restaurant: Mr. Carlbon controlled one account where credit card receipts were deposited; Ms. Foy controlled the second account where cash receipts were deposited. Credit card receipts accounted for most of the revenue of the restaurant. Ms. Foy alleges and Mr. Carlbon admitted at trial that he has not filed tax returns for himself or Foresite, L.L.C. for 2007 and subsequent years. She has attempted to determine the financial operations of the restaurant for her own personal tax filing. Although Mr. Carlbon promised on several occasions to provide that information, he failed to do so.

Plaintiff also alleged that the Debtor failed to: (a) list all his assets, and (b) explain the disposition of his assets. In particular, she alleged that Mr. Carlbon had artwork and other collectibles worth approximately $100,000, yet on Schedule B he listed only miscellaneous antiques valued at $1,000 and artwork at $1,500. On September 20, 2006, Mr. Carlbon submitted a hand-written personal financial statement to a bank on behalf of Foresite, L.L.C. and himself. On the balance sheet he listed glass showcases valued at $70,000 and antiques and art collection at $180,000. At trial, Mr. Carlbon testified that the $180,000 antiques and art collection was comprised of two marble mantelpieces valued at $30,000 each, a vault door in the old bank building where Birches restaurant was located valued at $100,000, and a chandelier hanging in that building valued at $20,000. Mr. Carlbon maintains that these items, being attached to the real property, belong to Foresite and did not have to be scheduled as his property in this bankruptcy

case. Furthermore, since a receiver has been appointed in a state court foreclosure proceeding against Foresite, LLC, these fixtures cannot be removed. Regarding the glass showcases, Mr. Carlbon testified at an examination under Bankruptcy Rule 2004 that he had purchased them and that they were still installed at the antiques emporium operated by Foresite, L.L.C. At trial, he changed his testimony and stated that the glass cases had been financed through Foresite, L.L.C. He claimed to have written records of their purchase, but failed to offer them into evidence.

One particular piece of artwork is an oil painting depicting a fox hunt scene that the Plaintiff values at $10,000 based upon what the Debtor told her. The painting had been stored in Birches restaurant but was moved at some point. In mid-2009 Plaintiff saw the painting hanging in an inn operated by the Debtor's friend ("Friend M"). The Debtor explained that a friend of his ("Friend G") purchased the painting at an auction in Pennsylvania for $380. Friend G gave the painting to the Debtor in satisfaction of a debt. The Debtor confirmed that the painting had been stored in Birches restaurant. Friend M performed some work for the Debtor and loaned him $5,000. The Debtor gave the painting to Friend M either in satisfaction of the debts, or as collateral (the Debtor's testimony was inconsistent on this point). He testified that the painting is worth $1,000. In any event, this painting was not listed as an asset on the Debtor's schedules; the debt to the Friend M was not scheduled; and the transfer of the painting in satisfaction of, or as collateral for, the loan was not disclosed on the Debtor's statement of financial affairs. During Plaintiff's examination of the Debtor pursuant to Bankruptcy Rule 2004, he was asked to produce any records or bank statements showing the receipt of the loan from Friend M. The Debtor produced no records of any of the loans with his friends or the acquisition or disposition of the

painting. He testified that the loan from Friend M occurred on February 5, 2007, because he was able to retrieve a check; however, he did not produce a copy of that check at trial.

In a further attempt to explain the disposition of his antiques and art collection, the Debtor testified in a Rule 2004 examination that he had given several pieces to his then live-in girlfriend who had sold the items to raise money for living expenses. His recollection during the Rule 2004 examination was that the gifts to the girlfriend occurred a few months before he filed bankruptcy on February 17, 2010. No such transfers were reported on the Debtor's statement of financial affairs. At trial, Mr. Carlbon tried to correct the timing of the transfers to his girlfriend. He testified that since his Rule 2004 examination he had researched his records and determined that the transfers to his girlfriend occurred several months after he filed bankruptcy. Furthermore, the proceeds of sale were only a few hundred dollars and the value of the assets had been included in the $1,000 of artwork listed on schedule B and claimed as exempt on Schedule C. None of the written records that the Debtor claims to have researched were offered into evidence at trial.

## DISCUSSION

A discharge under §727 of the Bankruptcy Code provides a fresh start to the honest but unfortunate debtor and is to be liberally construed in favor of the debtor. *Rosen v. Bezner*, 996 F. 2d 1527, 1531 (3d. Cir. 1993). Denial of a discharge is a harsh remedy and not to be taken lightly. *Id.*

### A. Transfer With Intent To Hinder, Delay or Defraud Creditors.    Section 727(a)(2).

A debtor who transfers or conceals property, within a year before the petition date, with the intent to hinder, delay, or defraud a creditor, may be denied a discharge. 11 U.S.C. § 727(a)(2)

6

(2006).   Courts have recognized several "badges of fraud," useful in analyzing the general facts of a case. These "badges" include:

1. lack or inadequacy of consideration;
2. the family, friendship or close associate relationship between the parties;
3. the retention of possession, benefit or use of the property in question;
4. the financial condition of the party sought to be charged both before and after the transaction in question;
5. the existence or cumulative effect of the pattern or series of transactions or course of conduct after incurring of debt, onset of financial difficulties or pendency or threat of suits by creditors;
6. the general chronology of the events and transaction under inquiry;
7. whether the transaction is conducted at arm's length;
8. whether the debtor is aware of the existence of a significant judgment or over-due debt;
9. whether a creditor is in hot pursuit of its judgment or claim and whether the debtor knows this; and
10. the timing of the transfer relative to the filing of the petition.

*Adamson v. Bernier* (*In re Bernier*), 282 B.R. 773, 781 (Bankr. D. Del. 2002).

Plaintiff alleges three transfers of property by the Debtor within the year prior to bankruptcy that were for the purpose of hindering, delaying or defrauding creditors: 1) Movement of a painting from the parties' restaurant to an inn operated by the Debtor's friend, 2) Transfer of several pieces of art and antiques to the Debtor's girlfriend, and 3) Granting of a mortgage to the

7

Debtor's parents just prior to filing bankruptcy.

1. *The Painting To A Friend's Inn.*

The complaint alleges that the Debtor kept artwork and other collectibles worth approximately $100,000 at Birches restaurant. Plaintiff testified that she saw a particular painting, valued at approximately $10,000, at one point stored at Birches but moved to another location. She next saw the painting in mid-2009 hanging in the inn of the Debtor's friend and that such transfer is not listed on the Debtor's petition.

The Debtor testified that his friend had loaned him money and did some work at Birches before it opened. To repay the debt, or as collateral, he gave the friend a painting that now hangs in the friend's inn. According to the Debtor, the transfer of the painting took place more than two years prior to the bankruptcy filing and need not have been disclosed in his statement of financial affairs. He produced no documentary evidence of the debt to his friend or the acquisition and disposition of the painting. While the court cannot find sufficient evidence to conclude that this admitted transfer was intended to hinder, delay or defraud creditors, it is indicative of the lack of records from which the debtor's financial affairs may be determined, and will be discussed below in connection with Section 727(a)(3).

2. *Art and Antiques Transferred To The Girlfriend.*

The Plaintiff further claims that the Debtor's petition did not list the transfer of art and antiques to his girlfriend months prior to the petition date. The Plaintiff argues that such a transfer, coupled with a failure to list that transfer, satisfies Section 727(a)(2). Regarding the transfer of art and antiques to the Debtor's girlfriend, the evidence here is conflicting. At trial, the

Debtor stated that he transferred the art to his girlfriend in August or September, 2010, after the bankruptcy was filed and that she sold the art on his behalf so the couple would have living money. This testimony conflicts with the Debtor's deposition statement that he had transferred the property in late 2009, which would be prior to the bankruptcy filing. What is missing from the evidence provided on this point though is dispositive. The Plaintiff has presented no evidence establishing that the transfers were made with the intent to hinder, delay, or defraud a creditor. The only evidence on the record establishes that the transfer was made with the intent to have living money. The Plaintiff makes a "badges of fraud" argument. The transfer to the girlfriend could qualify as a transfer to someone with a close personal relationship. Also, the timing of the transfer, whether before or after bankruptcy, and the Debtor's conflicting testimony, raise suspicions. However, the ultimate sales took place at a public antiques market between the girlfriend and strangers. There is no showing that the Debtor sold the items to close friends as a sham; that he retained control over the items; or that he received inadequate compensation. The Plaintiff has simply failed to demonstrate that the transfers to the girlfriend, whether before or after bankruptcy, were intended to hinder, delay or defraud a creditor or the trustee. The court should not accept an "obvious attempt to put assets out of the reach of creditors," argument, especially when it is not so obvious. Nevertheless, the failure to produce written evidence of the disposition of these assets will be discussed below.

   *3.   Mortgage Given To Parents.*

The Plaintiff points to mortgage given to the Debtor's parents that changed an unsecured loan to a secured loan. The Plaintiff and her attorney met with the Debtor and informed him that

9

she would be filing suit in state court. The next day, October 16, 2008, the Debtor's parents recorded a mortgage on property owned by Foresite, LLC to secure an outstanding loan. The Debtor admitted that he signed the mortgage to his parents in response to the Plaintiff's suit. The Plaintiff argues that the transfer is an "obvious attempt to put assets out of the reach of creditors . . . ." and warrants denial of discharge under Section 727(a)(2). The Debtor counters that the mortgage was not on his property, but on Foresite property and that the transfer took place 16 months prior to the filing of the bankruptcy petition. Therefore, on its face, this allegation does not satisfy the requirements of 727(a)(2)(A). The Debtor is correct. Even if the court were to disregard the fact that the real property belongs to Foresite and not the Debtor, the mortgage was recorded on October 16, 2008 more than a year prior to bankruptcy filing on February 17, 2010 and is outside the time limitation of Section 727(a)(2).

## *B. Failure To Keep Records. Section 727(a)(3).*

Section 727(a)(3) provides that a debtor shall not be granted a discharge when "the debtor has . . . failed to keep or preserve any recorded information . . . from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case." 11 U.S.C. § 727(a)(3) (2006). The purpose is not to induce immaculate record keeping. *In re Decker*, 595 F.2d 185, 187 (3d Cir. 1979); *Meridian Bank v. Alten*, 958 F.2d 1226 (3d Cir. 1992). Rather, the purpose is to give creditors accurate information concerning the status of debtor's affairs. *Meridian*, 958 F.2d at 1230. The "statute also ensures that the trustee and creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history." *Id.* The test is whether there is

10

available written evidence, made and preserved, from which the present financial condition of the debtor and his business transactions may be ascertained. *Id.* at 1230.

The party objecting to discharge bears the burden of proof. Fed. R. Bankr. P. 4005. The Plaintiff must show: 1) that that the debtor failed to maintain and preserve adequate records; and 2) that such failure makes it impossible to determine debtor's financial condition and material business transactions. Then burden then shifts to debtor to justify absence of adequate records. *Meridian*, 958 F.2d at 1232-33.

Whether the debtor has provided sufficient justification depends on what a reasonable person would do in similar circumstances. In determining the sufficiency of the justification, the court should consider the: 1) debtor's education; 2) debtor's sophistication; 3) volume of debtor's business; 4) complexity of debtor's business; 5) amount of credit extended to debtor in his business; 6) any other circumstances that should be noted in the interest of justice. *Id.* at 1231. Intent is not a relevant factor. *Panda Herbal Int'l, Inc. v. Luby* (*In re Luby*), 438 B.R. 817, 830–833 (Bankr. E.D. Pa. 2010).

The Debtor is an educated person who has owned and operated several sophisticated business such as commercial real estate development and leasing, the antiques emporium and Birches restaurant. As the sole owner, or financial principal, in each business he was responsible for recordkeeping and should have kept detailed records showing the transactions for each business as well as his personal affairs. Mr. Carlbon testified in a pretrial deposition that he did not have books and records for the restaurant. No financial statements such as operating reports, statements of cash flow, or balance sheets were presented for any of Mr. Carlbon's businesses.

11

Mr. Carlbon testified that there were bank statements, however, the bank records from Birches restaurant and Foresite, L.L.C. were not placed in evidence.

The Plaintiff has sought an accounting of the proceeds of approximately $300,000 in refinancing of Foresite, L.L.C.'s mortgages, but the Debtor has failed to produce any records. Plaintiff complains that the Debtor has not prepared tax returns for himself or his businesses for several years prior to filing bankruptcy, and other than bank statements and cancelled checks, there are insufficient records to ascertain the Debtor's financial condition. Lastly, the Plaintiff alleges that the Debtor has failed to keep records of his antiques and art collection, loans from friends and family, or acquisitions of major assets such as the glass showcases, marble mantelpieces and a chandelier.

The Debtor has attempted to provide an explanation for each of these. First, the Debtor explained that the cash back from the mortgaging of Foresite's real property was spent upgrading the building   The Debtor states that proof of this is on his 2006 tax returns. However, these tax returns were not produced at trial. This is entirely insufficient. The Debtor knew the disposition of the refinancing proceeds was in question and the dollar amount is significant - $300,000. Surely, a sophisticated businessperson is expected to have records of where he spent such a large sum of money. He should be able to produce copies of contracts with contractors, receipts of materials purchased, or bank statements and cancelled checks. Such a failure, combined with such an inadequate explanation must lead to the denial of discharge pursuant to §727(a)(3).

The Debtor has failed to file tax returns for himself or Foresite, L.L.C. for four consecutive years – 2007 through 2010. Here, the Debtor offers almost no explanation, other than owing

12

money to his accountant.  He readily admits to not having filed returns even when his businesses were operating.  Especially egregious is the failure to file sales tax returns for Birches restaurant since the funds collected from patrons are held in trust for the state.  Ms. Foy is severely impacted by Mr. Carlbon's failure to have tax returns prepared and filed for the restaurant business since she was meant to be a co-owner.  The failure to prepare tax returns makes it nearly impossible for a creditor to determine the Debtor's financial situation.  *Wachovia Bank, N.A. v. Spitko* (*In re Spitko*), 357 B.R. 272, 304-310 (Bankr. E.D. Pa. 2006).

The Debtor explained that the $180,000 in arts and antiques listed on the personal financial statement from 2006 were not his but were owned by Foresite and that they consisted of a bank vault door worth $100,000, a chandelier worth $20,000, and two marble mantels worth a total of $60,000.  At trial he failed to produce any documents evidencing the acquisition of these items, although he claimed the bank vault door was part of the building when Foresite acquired it.  These are significant items of value that Mr. Carlbon used in obtaining financing from a bank.  He should have records of the purchase of the chandelier, mantles and glass cases, if not the vault door.  In addition, the court finds Mr. Carlbon's testimony incredible.  Both Ms. Foy and Mr. Carlbon testified that there were numerous pieces of art and antiques stored in the restaurant building, in other commercial buildings he owned, and in his residence.  Mr. Carlbon operated an antiques emporium where other vendors displayed and sold objects.  He clearly was a player in the art and antiques world.  When he used the term "antique and art collection" on his personal financial statement valued at $180,000 he was referring to movable personal property that one would see displayed in a showroom such as the one operated by Mr. Carlbon.  His *ex post facto*

reconstruction of that financial statement to refer to fixtures such as the vault door, chandelier and mantels is incredible. He would not have used the term art and antiques collection to refer to items incorporated into a building. Once again, the failure to document his collection of antiques and art must lead to a denial of discharge under §727(a)(3).

The Debtor explained that the $70,000 showcases listed on the 2006 financial statement were owned and used by Foresite. He asserts that Foresite rents the showcases out to vendors for them to display their products. Here, the Debtor's credibility also became an issue. In his deposition, the Debtor stated that he owned the showcases. At trial, the Debtor stated that he had researched the purchase after the deposition to determine whether it was he or Foresite that owned the showcases. When directly questioned multiple times about the results of his research, the Debtor balked, stating that "it was a financing thing" and avoided directly answering the query. Further, the Debtor explained his failure to produce the results of his post-deposition research by saying that he did not know it was important. This seems incredible and entirely insufficient to carry the Debtor's burden under §727(a)(3).

As pointed out above, there was one painting that the Debtor claimed he acquired in satisfaction of a loan then used later as collateral for, or in satisfaction of, an obligation he owed to his friend. That painting ended up displayed in the friend's inn. No records were produced of either loan transaction or of the acquisition or disposition of the painting. There is nothing illegal about unorthodox transactions like personal loans and using art work to satisfy debts. However, a person seeking protection under bankruptcy must have records to qualify for a discharge. Without records a discharge may not be granted. *Cadle Co. v. Prupis* (*In re Prupis*), Ch. 7 Case

14

No. 04-48414-RG, Adv. No: 05-2674-RTL, 2007 Bankr. LEXIS 323 (Bankr. D.N.J. 2007).

### C. False Oath. Section 727(a)(4).

Under §727(a)(4) the court shall not grant a discharge when "the debtor knowingly and fraudulently, in or in connection with the case, . . . made a false oath or account. 11 U.S.C. § 727(a)(4)(A). In order to deny a debtor a discharge under §727(a)(4)(A), the plaintiff must show that 1) the debtor made a false oath or statement; 2) the debtor knew the statement was false; 3) the debtor made the statement with the intent to deceive; and 4) the statement was material to the bankruptcy case. *Panda Herbal Int'l*, 438 B.R. at 833; *Winograd v. Karpo* (*In re Karpo*), Ch. 7 Case No. 09-38892-JHW, Adv. No. 10-1132, 2011 WL 3034486, at *14 (Bankr. D.N.J. 2011). Further, "the misrepresentation must be willful and intentional." *Id* at *14. An honest mistake will not bar the debtor a discharge. *Id.*

In this case, the statement of financial affairs (SOFA) states: "I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct." Question 10 of the SOFA requires a debtor to list all property transferred either absolutely or as security within two years preceding the filing. The same transfers that form the basis of the complaint under §727(a)(2) described above are alleged to have been omitted from the SOFA; i.e. the painting now hanging in the friend's inn, the art and antiques given to the girlfriend, and the mortgage to the parents.

The Debtor testified that he gave the painting to his friend more than two years before bankruptcy. Ms. Foy testified that she saw it displayed in the inn sometime in 2009, but has no evidence of when the transfer actually took place. There is no reason to doubt the Debtor's

15

testimony in this regard and insufficient evidence to find that the transfer of the painting took place within two years prior to filing bankruptcy, so the SOFA is not false in this regard.

The transfers to the girlfriend are problematic for the Debtor because his trial testimony that the transfers took place after bankruptcy conflicts with his pretrial testimony that the transfers occurred within a few months prior to filing bankruptcy.   On this point the court will accept that the Debtor was mistaken in his pretrial testimony.   The court finds that the transfers to the girlfriend were made post-petition and the proceeds were used for their joint living expenses.  Thus, the SOFA was not false in this regard either

The Plaintiff points to the conversion from unsecured to secured of the loan from the Debtor's parents.   Section 101(54) defines a transfer as, *inter alia*, the creation of a lien.   Here, this conversion seems to fit the definition of a transfer.   Further, it occurred within two years of the filing of the petition.   However, the mortgage is on real property belonging to Foresite, L.L.C., not the Debtor individually.   The SOFA does not require disclosure of property transfers by a separate non-debtor entity even if wholly owned by the Debtor.

The Debtor's schedules of assets were filed under oath.   Plaintiff claims that the Debtor falsely undervalued his art and antiques.   There is no evidence to refute the Debtor's statement concerning the value of these assets as of the date of bankruptcy.   As explained below, the court finds that the Debtor has failed to explain how his art and antiques collection went from a value of $180,000 in September, 2006 to $2,500 in February, 2010.   But, there is no basis to find that the value placed on those items in his schedules was intentionally false.

16

*D. Failure To Explain Loss of Assets. Section 727(a)(5).*

Section 727(a)(5) provides that the court shall not grant a discharge where "the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5) (2006). Plaintiff has the initial burden of showing that the Debtor had assets that are no longer available. *Winograd,* 2011 WL 3034486, at *12-13. Similar to subsection (a)(3), fraudulent transfer or concealment need not be shown and intent is not an element. 6 COLLIER ON BANKRUPTCY 727.08 (Alan N. Resnick & Henry J. Sommer eds. 16th ed. 2011). Once the plaintiff establishes a prima facie case (i.e. that the debtor had assets before bankruptcy but no longer had them at the time of bankruptcy), the burden shifts to the debtor to explain "satisfactorily" the loss of those assets. *See id.* The explanation must appear reasonable. *Panda Herbal Int'l,* 438 B.R. at 834. Further, an estimate of what happened to the assets, even when plausible, may be rejected when it is not supported by documentation. *See, e.g., Chalik v. Moorefield* (*In re Chalik*), 748 F.2d 616 (11th Cir. 1984) (rejecting as insufficient the debtor's undocumented assertion that he had lost money on two failed corporations and had spent money on living expenses); *see also First Texas Sav. Ass'n, Inc. v. Reed* (*In re Reed*), 700 F.2d 986, (5th Cir. 1983) (affirming bankruptcy court's finding as unsatisfactory debtor's explanation that almost $20,000 was lost in undocumented expenses and gambling debts).

The allegations here relate to $300,000 in loan proceeds from the mortgage refinancing and the $180,000 in arts and antiques. The Debtor testified that the loan proceeds were reinvested in improvements to Foresite's real property. He claims that the written proof of that is contained in his (or Foresite's) 2006 tax returns. However, he failed to produce those tax returns during

17

discovery or at trial.   In the absence of documentation, the court does not accept the Debtor's explanation of the disposition of these loan proceeds.

As to the art and antiques collection valued at $180,000 on the financial statement given to the bank, the court has previously indicated disbelief of the Debtor's testimony that he was referring to the bank vault door, a chandelier and two mantelpieces.   Also, the Debtor testified that many of the items stored in his commercial buildings belonged to relatives such as his parents and brother which contravenes the representation to the bank.   This explanation is not satisfactory.   There is no reason why he should not be able to provide a more thorough explanation of what happened to these very valuable assets.   For this reason, the Debtor's discharge must also be denied under 727(a)(5).

## **CONCLUSION**

Although denial of a discharge is an extreme step, not to be taken lightly, *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993), a debtor must meet certain qualifications in order to warrant a discharge.   He must have records from which his financial condition may be determined and he must be able to explain the loss of significant assets.   In this case, the Debtor operated several businesses, including a restaurant, antiques emporium and real estate leasing.   He has not produced financial statements for these businesses nor filed tax returns for himself or his company since 2006.   In addition, the Debtor has borrowed money from friends and family and acquired a collection of art and antiques, yet he has produced no records of his borrowing, loan repayment or the acquisition and disposition of his collection.   He is not entitled to a discharge because he failed to keep records from which his financial condition can be determined.

In September, 2006, the Debtor borrowed $300,000 and represented to the bank that he had a collection of art and antiques valued at $180,000. When he filed bankruptcy three and a half years later he had minimal cash and tangible personal property. The Debtor has failed to satisfactorily explain the loss of these assets.

The balance of the complaint seeking a determination of nondischargeability under §523(a) is moot. An order for final judgment will be entered denying the Debtor a discharge.


Dated: December 20, 2011                /S/Raymond T. Lyons
                                        United States Bankruptcy Judge